**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**


**CHRISTOPHER L. SHINHOLSTER**,               :          Case No. 05:12 CV 2495

      Petitioner,                                        :

vs.                                                          :

**DONALD MORGAN, WARDEN**,               :

                                            **MAGISTRATE'S REPORT AND**

      Respondent.                            :          **RECOMMENDATION**


## I. INTRODUCTION

This case was automatically referred to the undersigned Magistrate Judge for report and recommendation pursuant to 72.2(b)(2) of the UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO LOCAL CIVIL RULES.  Pending are the Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254, Respondent's Return of Writ, Petitioner's Traverse to Return of Writ and Reply to Petitioner's Traverse (Docket Nos. 1, 6, 9 & 12).  For the reasons set forth below, the Magistrate recommends that the Court deny Petitioner's Petition for Writ of Habeas Corpus.

## II. FACTUAL BACKGROUND.

In a proceeding instituted by an application for a writ of habeas corpus by a person in

custody pursuant to the judgment of a State court, the determination of factual issues made by a State court shall be presumed to be correct.  28 U. S. C. § 2254(d)(1) (Thomson Reuters 2013). This statutory presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records.  *Hardaway v. Withrow,* 305 F.3d 558, 563 (6th Cir. 2002) *cert. denied*, 123 S.Ct. 2078 (2003) (*citing Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir.2001) (*citing Sumner v. Mata*, 101 S.Ct. 764, 768-769 (1981)).  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.  *Id.* (*citing* 28 U.S.C. § 2254(e)(1)).

In the instant case, these facts were presented to the jury.  They are not refuted by Petitioner.

> On July 23, 2009, while surveying parcels being unloaded at a local FedEx distribution center, a detective from the Summit County Sheriff's Department narcotics division identified a suspicious package addressed to an Akron residence on Hardesty Boulevard.  The detective brought in a drug-sniffing dog who alerted on the package.  After obtaining a search warrant to open the package, the detective determined the package contained over a kilogram of cocaine.  Akron police were contacted to perform a controlled delivery of the package to the target residence midmorning that same day.  Before the delivery, police surveillance identified a silver Bonneville sitting in front of the target residence, with Petitioner sitting in the driver's seat looking toward the house. His car left, then returned shortly thereafter and circled the block again. Approximately five minutes after the delivery, police saw the silver Bonneville pulling into a nearby driveway.  When police stopped the car, Petitioner exited and was unable to provide police with any explanation as to why he was in the area or the name of anyone living in the neighboring houses where he was parked. Additionally, Petitioner had $720 on his person and a receipt for a shipment made three days earlier from the Hardesty Boulevard address to an address in Pearland, Texas, which was the same city from which the drug-filled package was sent.

### III. Procedural Background.

**A.     Indictment & Preliminary motions.**

On August 5, 2009, Petitioner was indicted on one count (Count One) of possession of

cocaine, a violation of OHIO REV. CODE §§ 2925.11(A)(2), (C)(4)[1], one count (Count two) of trafficking in cocaine, a violation of OHIO REV. CODE §§ 2925.03(A)(2), (C)(4)[2] and the following specifications as to Counts one and two:

    (a)    Major drug offender as set forth in OHIO REV. CODE § 2929.01(X) who was convicted of or plead guilty to possession of cocaine, in violation of OHIO REV. CODE § 2941.1410;

    (b)    Forfeiture of $720, property derived directly or indirectly from any proceeds obtained directly or indirectly from the commission of a felony drug abuse offense or act, in violation of OHIO REV. CODE § 2941.1417; and

    (c)    Forfeiture of a 2003 Pontiac Bonneville, License #EGY6964, property that was used or intended to be used in the commission or facilitation of the felony drug abuse offense, in violation of OHIO REV. CODE § 2941.1417 (Docket No. 6-1, pp. 1-3 of 216).

Petitioner waived an appearance in open court on August 7, 2009 and *inter alia*, entered a written plea of not guilty to the indictment (Docket No. 6-1, pp. 4-5 of 216).  Petitioner, *pro se*, filed a motion for suppression of evidence and an *in camera* inspection hearing on February 2, 2010 (Docket 6-1, pp. 9-12 of 216).  On February 9, 2010, Petitioner, by and through counsel, filed a (1) supplemental motion to suppress, (2) motion to suppress *nunc pro tunc* and (3) request for an admissibility hearing (Docket No. 6-1, pp. 13-15; 16-18; 19-21 of 216).  On February 16, 2010, Petitioner, by and through counsel, filed a *motion in limine* to exclude:

    1.    Any mention of the polygraph examination taken by Kisha Marshall, an individual who was charged with identical offenses.

---

[1]

    (A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.  Whoever violates division (A) of this section is guilty of possession if the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine.  OHIO REV. CODE §§ 2925.11(A)(C) (Thomson Reuters 2013).

[2]

    (A) No person shall knowingly prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.  If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of trafficking in cocaine.

2.      Any mention of Thomas or Carson Blackwell; and

3.      Any mention of Chris Callwell (sp) (Docket No. 6-1, pp. 22-24 of 216).

The court held a hearing on the motions to suppress and *in limine* on February 16, 2010. Based on the totality of the circumstances, the court denied the motion to suppress and ordered that Kisha Marshall could not testify as to the results of her polygraph examination.  The court overruled the motion *in limine* with the understanding that the court was going to have to hear the basis for some of the testimony coming from the officers before ruling on the admissibility (Docket No. 6-3, pp. 33-35; 43; 55 of 84).

**B.      TRIAL AND CONVICTION.**

On February 18, 2010, the jury found Petitioner *guilty* on both counts and the criminal forfeiture as to the Pontiac Bonneville.  Petitioner was found *not guilty* of criminal forfeiture specification as to the $720.00 in cash confiscated from Petitioner at the time of his arrest (Docket No. 6-1, pp. 25-28; 29-30 of 216).

Upon consideration of all matters set forth by law, it was the judgment of the court that Petitioner be sentenced to a mandatory ten years as to Count one, the possession of cocaine.  The judge adjudicated Petitioner guilty of the specification of major drug offender, noting Petitioner's prior history with drugs, the quantity of drugs brought into the community and the duping of another innocent person as contributing factors in assessing the seriousness of the offense.  The judge sentenced Petitioner to five years, to run consecutive to the ten years in Count one.  The judge further ordered that the $720 be returned to Petitioner and that consistent with the jury finding, the vehicle be forfeited (Docket No. 6-6, pp. 10-12 of 15).

As to Count two, trafficking in cocaine, the judge sentenced Petitioner to ten years to run concurrent to the ten-year sentence in Count one.  Finding Petitioner guilty of major drug offender status, the judge sentenced him to five years to run consecutive to the ten-year sentence.

4

The judge ordered that the $720 be returned to Petitioner and that consistent with the jury finding, the vehicle be forfeited.  In addition, the judge ordered that upon release, Petitioner was subject to a mandatory period of five years of post-release control (Docket No. 6-6, pp. 11-12 of 15).

**C.     DIRECT APPEAL.**

Petitioner timely appealed his convictions to the court of appeals, asserting four assignments of error.

1.     The trial court erred in denying Petitioner's motion to suppress.
2.     The trial court erred in denying Petitioner's CRIM. R. 29 motion as the State presented insufficient evidence to sustain a conviction.
3.     The jury created a manifest miscarriage of justice as the verdict was against the manifest weight of the evidence.
4.     The prosecutor committed misconduct by considering a dismissal of the charges against the co-defendant based upon her testimony.

(Docket No. 6-1, p. 41 of 216).

All four of Petitioner's assignments of error were overruled and the judgment of the trial court was affirmed by the Court of Appeals for the Ninth Judicial District on May 11, 2011.  The appellate court found that:

1.     In light of the evidence and based on the totality of circumstances, there was reasonable suspicion for an investigatory detention and there was probable cause to arrest Petitioner.  Accordingly, the trial court did not err in denying Petitioner's motion to suppress because the police lacked probable cause to arrest him.
2.     When viewed in a light most favorable to the state, the evidence could have convinced the jury beyond the point of reasonable doubt that Petitioner was engaged in possession and trafficking in cocaine in an amount over 1,000 grams.
3.     The jury did not lose its way in convicting Petitioner of possession and trafficking in cocaine in excess of 1,000 grams.
4.     There was nothing improper with respect to the prosecutor's conduct in this case, Petitioner cannot prove he suffered any prejudice as a result (Docket No. 6-1, pp. 97-113 of 216).

5

**D.**     **APPEAL TO THE SUPREME COURT OF OHIO**.

Petitioner, *pro se*, filed a notice of appeal and memorandum in support of jurisdiction in the Supreme Court of Ohio on June 16, 2011.  In the memorandum in support of jurisdiction filed in the Court of Appeals for the Ninth Judicial District on May 11, 2011, Petitioner presented the following propositions of law:

1.    The trial court erred in denying Petitioner's motion to suppress, a violation of the Fourteenth Amendment.
2.    The trial court erred in denying Petitioner's CRIM. R. 29 motion as the State presented insufficient evidence to sustain a conviction in violation of the Fourteenth Amendment Due Process Clause.
3.    The jury created a manifest miscarriage of justice as the verdict was against the manifest weight of the evidence, a violation of the Fourteenth Amendment Due Process Clause.
4.    The prosecutor committed misconduct by considering a dismissal of the charges against the co-defendant based upon her testimony, a violation of the Fourteenth Amendment Due Process Clause (Docket No. 6-1, pp. 114-128 of 216).

On October 5, 2011, the Supreme Court of Ohio declined jurisdiction to hear the case and dismissed it as not involving any substantial constitutional question (Docket No. 6-1, p. 148 of 216).

**E.**     **APPLICATION TO REOPEN AND ITS APPEAL.**

On August 2, 2011, Petitioner, *pro se*, filed an application to reopen direct appeal under OHIO APP. R. 26(B)[3], alleging that appellate counsel was ineffective for failing to argue on appeal that:

---

[3]

A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel.  OHIO APP. R. 26(B) (Thomson Reuters 2013).

1.  The modification and/or amendment to judgment of conviction, by way of *nunc pro tunc*, were contrary to law.
2.  The sentence imposed by trial court was contrary to law, because the jury verdict forms do not sustain a conviction for a first degree felony in courts one or two.
3.  The sentences herein are void pursuant to being imposed on allied offenses of similar import, thereby affronting double jeopardy prohibitions.
4.  State officials committed outrageous government conduct when they combined two distinctively separated quantities and qualities of evidence into one bulk package, thereby trying, convicting and sentencing Petitioner for crimes for which he had not been arrested (Docket No. 6-1, pp. 149-158 of 216).

On September 29, 2011, the court of appeals denied the application to reopen filed under

Ohio App. R. 26(B) (Docket No. 6-1, pp. 179-181 of 216).

On November 14, 2011, Petitioner, *pro se*, filed a memorandum in support of jurisdiction

in the Supreme Court of Ohio, raising five grounds for relief:

1.  Petitioner received ineffective assistance of appellate counsel where the cumulative effect of unwaged errors suggests a strong likelihood of a different outcome.
2.  *Nunc pro tunc* cannot be used to correct what the court meant to do.
3.  Where a jury verdict form states the aggravating elements of crime in terms of a major drug offender specification, which is outside of jury's purview, there exists a failure to convict in the first degree and defendant must be viewed as convicted in least degree.
4.  Possession of cocaine, an offense defined in Ohio Rev. Code § 2925.11(A),(C)(4) and trafficking in cocaine, an offense defined in Ohio Rev. Code § 2925.03(A)(2), are allied offenses of similar import under *State v. Cabrales*, 118 Ohio St. 3d 54 (2008).
5.  It is outrageous government conduct where two distinctively separate quantities and qualities of drugs are combined into a single quantity and quality for purpose of seeking a more severe penalty upon conviction (Docket No. 6-1, pp. 187-197 of 216).

The Supreme Court of Ohio dismissed the appeal as not having any substantial

constitutional question on January 18, 2012 (Docket No. 6-1, 202 of 216).

7

F.     PETITION UNDER 28 U. S. C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE
       CUSTODY.

Petitioner filed the Petition in this Court on October 5, 2012.  Petitioner asserts seven

grounds for relief:

1.     The trial court erred by failing to dismiss the State's charges against him because
       there was insufficient evidence to convict him and his convictions were against
       the manifest weight of the evidence.

       *Supporting Facts*:
       Insufficient evidence was presented to convict Petitioner of possession of cocaine,
       trafficking in cocaine and the accompanying specifications.  The officers had no
       direct knowledge of his involvement in arranging for the delivery of drugs and
       Kisha Marshall, charged with the identical offenses, was an unreliable witness
       against him.

2.     The prosecutor engaged in misconduct by basing the dismissal of charges against
       Kisha Marshall on providing inculpatory testimony against Petitioner.

       *Supporting Facts.*
       The prosecutor forced Kisha Marshall to deliver testimony sufficient to guarantee
       a conviction.

3.     Appellate counsel was ineffective for failing to raise the following issues on
       direct appeal or in the motion to reopen:

       a.     The trial court erred by issuing a *nunc pro tunc* order by interpreting the
              jury verdict forms, making rulings that involved issues which were not
              clerical in nature and the trial court made determinations outside the
              presence of Petitioner.
       b.     The trial court erred in convicting Petitioner of the first degree felonies
              due to the irregularities in the verdict forms which should have resulted in
              the lowest form of the offenses charged.
       c.     The offenses of trafficking and possession of cocaine are allied offenses of
              similar import; therefore, the execution of both offenses is a violation of
              the Double Jeopardy clause.
       d.     The prosecution committed prosecutorial misconduct by combining two
              separate and distinct packages of drugs into one package in order to obtain
              a higher level of felony conviction.

4.      The trial court erred in issuing a *nunc pro tunc* order by interpreting the jury verdict forms, making rulings that involved issues which were not clerical in nature and the trial court made these determinations outside the presence of the Petitioner.

5.      The trial court erred in convicting Petitioner of the first degree felonies due to the irregularities in the verdict forms which should have resulted in the lowest form of the offenses charged.

        *Supporting Facts:*
        The signed verdict forms in the present case failed to include either the degree of the offenses charged or a statement of findings addressing the aggravating elements of the counts and specifications within the indictment.  The trial court sentenced Petitioner to the highest level of the offenses charged rather than the least degree of the offense as required by OHIO REV. CODE § 2945.75.

6.      The offenses of trafficking cocaine and possession of cocaine are allied offenses of similar import.

        *Supporting Facts*:
        The alleged act of possessing cocaine and trafficking in cocaine require the same animus.  However, Petitioner was convicted of both and sentenced for both.

7.      The prosecutor committed prosecutorial misconduct by combining two separate and distinct packages of drugs in order to obtain a higher level of felony conviction.

        *Supporting Facts*
        Petitioner contends that the drugs seized were separate and distinct drugs; however, law enforcement officers combined the two packages to increase the total weight and ultimately the increased weight resulted in higher level felony convictions (Docket No. 1-1, pp. 1-8 of 8)**.**

### V. PROCEDURAL BARRIERS TO REVIEW.

Before the undersigned Magistrate can review the merits of the Petition for Writ, Petitioner must overcome several procedural barriers.  Procedural barriers such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, may operate to limit access to review on the merits of Petitioner's constitutional claims.  *See Daniels v. United States*, 121 S. Ct. 1578, 1582-1583 (2001).

9

A.    THE STATUTE OF LIMITATIONS STANDARD OF REVIEW AND ANALYSIS.

Under the ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT of 1996 (AEDPA), there is a one year statute of limitations that applies to the application of a writ of habeas corpus filed by a person in custody pursuant to a state court.  *Keeling v. Warden, Lebanon Correctional Institution*, 673 F.3d 452, 458 (6th Cir. 2012) *cert. denied*, 133 S.Ct. 141 (2012) (*citing* 28 U.S.C. § 2244(d)(1)).  This statute of limitations begins to run from the latest of:

> (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* at 458-459 (*citing* 28 U.S.C. § 2244(d)(1)(A)–(D)).

Direct review for purposes of Section 2244(d)(1)(A) encompasses review by the United States Supreme Court.  *Lawrence v. Florida*, 127 S.Ct. 1029, 1082-1083 (2007).  The petitioner has 90 days to file a writ of *certiorari* to the United States Supreme Court.  *Id.* at 1083.

AEDPA's one-year limitations period is not a jurisdictional bar and is subject to equitable tolling in certain instances.  *Ata v. Scutt,* 662 F.3d 736, 741 (6thCir.2011) (*See Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010)).  A petitioner is entitled to equitable tolling only if he or she shows:

> 1.    The diligent pursuit of his or her rights and
> 2.    That some extraordinary circumstance stood in his or her way, thereby preventing the timely filing.

*Id.* (*citing Holland*, 130 S.Ct. at 2562; *quoting Pace v. DiGuglielmo*, 125 S.Ct. 1807, 1814-1815

10

(2005); *see also Robertson v. Simpson*, 624 F.3d 781, 783–784 (6ᵗʰ Cir.2010) (*quoting Holland*, 130 S.Ct. at 2560–62)).  Equitable tolling should be applied "sparingly." *Id.* (*citing Solomon v. United States*, 467 F.3d 928, 933 (6ᵗʰCir.2006).  The petitioner bears the ultimate burden of persuading the court that he or she is entitled to equitable tolling. *Id.* (*citing Griffin v. Rogers*, 308 F.3d 647, 653 (6ᵗʰCir.2002)).

Because Petitioner's claims do not implicate Sections 2244(d)(1)(B), (C) or (D), the statute of limitations is calculated from the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.  Here, the statute of limitations began to run ninety days after which Petitioner could have requested relief in the United States Supreme Court or on January 12, 2012.  Petitioner's properly filed application to reopen direct appeal tolled the statute of limitations from August 2, 2011 through January 18, 2012.  One year later, the statute of limitations expired on January 18, 2013.  Petitioner filed a Petition for Writ of Habeas Corpus on October 5, 2012.  The expiration of the statute of limitations is not an impediment to habeas review of Petitioner's claims.

**B.    PROCEDURAL DEFAULT STANDARD OF REVIEW.**

Procedural default is a threshold rule that a court generally considers before reviewing the applicable law and available remedies in a habeas petition. *Lovins v. Parker,* 712 F.3d 283, 294 (6ᵗʰ Cir.2013) (*See Lambrix v. Singletary*, 117 S.Ct. 1517, 1523 (1997) (noting that procedural default should "ordinarily" be considered before retroactivity)).  The procedural default rule is related to the statutory requirement that a habeas petitioner must exhaust any available state-court remedies before bringing a federal petition. *Id.* (*See* 28 U.S.C. § 2254(b), (c)).  Both rules have the purpose of allowing state courts the opportunity to address federal constitutional claims "in the first instance" before the claims are raised in federal habeas

11

proceedings.  *Id.* (*citing Coleman v. Thompson*, 111 S.Ct. 2546, 2555 (1991)).

      Under the procedural default rule, a federal court acting on a state prisoner's habeas petition will not review a question of federal law if the last state-court judgment denying relief on the claim rests on a procedural state-law ground that is "independent of the federal question and is adequate to support the judgment."  *Id.* at 295 (*citing Coleman*, *supra*, 111 S.Ct. at 2553-2554).  The rule "has its historical and theoretical basis in the 'adequate and independent state ground' doctrine" that governs direct review of state court cases by the United States Supreme Court. *Id.* (*citing Harris v. Reed*, 109 S.Ct. 1038, 1041-1042 (1989) (*citing Wainwright v. Sykes*, 97 S.Ct. 2497, 2502, 2503, 2506 (1977)).  "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court."  *Id.* (*citing Coleman*, *supra*, 111 S.Ct. at 2555).

      Generally, a claim may be procedurally defaulted in two ways.  *Id.* (*citing Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir.2006).  First, a claim is procedurally defaulted where state-court remedies have been exhausted within the meaning of Section 2254, but where the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule.  *Id.* (*citing Williams*, 460 F.3d at 806).  Second, a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.  *Id.* (*citing Williams*, 460 F.3d at 806).

      Under the independent and adequate state ground doctrine, a federal habeas claim is procedurally defaulted when the:

      (1)    Petitioner fails to comply with a state procedural rule;

(2)     State courts enforce the rule;

(3)     State procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and

(4)     Petitioner cannot show cause and prejudice excusing the default.

*Id.* (*citing Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir.2010) (en banc)). The second prong of this test requires that the state courts "actually enforce[ ]" the state procedural rule in denying relief.  *Id.* (*citing Stone v. Moore*, 644 F.3d 342, 346 (6th Cir.2011) (*quoting Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986)).  In other words, "it is not sufficient that the state court could have applied a procedural default under state law; it must actually have done so."  *Id.* (*citing Skipper v. French*, 130 F.3d 603, 609 (4th Cir.1997) (*citing Caldwell v. Mississippi*, 105 S.Ct. 2633, 2638-2639 (1985)).

In determining whether a state court actually enforced a procedural rule, we apply the "plain statement" rule of *Michigan v. Long*, 103 S.Ct. 3469 (1983).  *Id.* (*See Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989)).  Because a plain statement is required, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar."  *Id.* (*citing Harris*, 109 S.Ct. at 1043).

### 1.     PETITIONER'S CLAIMS THAT HAVE NOT BEEN PROCEDURALLY DEFAULTED.

a.     Petitioner presented his *first* ground for relief–insufficient evidence and manifest weight of the evidence–on direct appeal and in a memorandum requesting that the Supreme Court of Ohio accept jurisdiction.

b.     Petitioner presented his *second* ground for relief–prosecutorial misconduct for use of witness Kisha Marshall–on direct appeal and in a memorandum requesting that the Supreme Court of Ohio accept jurisdiction.

c.     Petitioner presented his *third* ground for relief–appellate counsel was ineffective-in a motion to reopen pursuant to OHIO APP. R. 26(B) and in a memorandum requesting that the Supreme Court of Ohio accept jurisdiction.

13

2.    PETITIONER'S CLAIMS THAT ARE PROCEDURALLY DEFAULTED.

Petitioner acknowledged that the OHIO APP. R. 26(B) application process was constitutional; that he was required to exhaust his claims in the state courts and that his OHIO APP. R. 26(B) application was sufficient to fairly present both his principal claims for ineffective assistance of appellate counsel, as well as the predicate claims upon which that alleged ineffectiveness was based.  Petitioner insists that he presented these claims independently during the direct review and that the substantive merit of these independent claims was presented in the post-conviction proceedings on the same theory as they are being raised here.

Respondent maintains that Petitioner never fairly presented grounds four, five, six and seven to the State courts; that there remains no procedural mechanism for him to do so; and that his claims are procedurally defaulted.  Petitioner cannot cure his earlier procedural default in his direct appeal through the OHIO APP. R. 26(B) procedure.  Therefore, grounds four, five, six and seven cannot be brought in the OHIO APP. R. 26(B) application.

The Magistrate acknowledges that the sole purpose of an OHIO APP. R. 26(B) motion is to present Petitioner's claims of ineffective assistance of appellate counsel.  It is not intended to allow Petitioner another bite at the apple by raising claims on the merits that he failed to raise previously.  Consequently, the substance of Petitioner's fourth, fifth, sixth and seventh grounds must be read as pertaining to the merits of Petitioner's ineffective assistance of counsel claim, not his state procedural rule claims.  The Magistrate concludes that Petitioner's fourth, fifth, sixth and seventh grounds for relief have not been preserved as arguments for collateral review on their merits independent of the ineffective assistance of counsel claim.

It is uncontroverted that independent of his OHIO APP. R. 26(B) motion, Petitioner failed to fairly present his fourth, fifth, sixth and seventh grounds for relief through the requisite levels

14

of state appellate review to the state's highest court.  The avenue by which he may present his federal constitutional claims to the state's highest court is no longer open to him.  These claims are considered waived for purposes of federal habeas corpus review, unless Petitioner can demonstrate both cause for the procedural default, as well as actual prejudice from the alleged constitutional error.  Accordingly, the Magistrate undertakes the seminal four-part *Maupin* analyses to ascertain whether Petitioner's failure to observe a state procedural rule actually precludes habeas review.

      **a.**      **THE MAUPIN STANDARD OF REVIEW–THE FIRST THREE FACTORS.**

In the Sixth Circuit, noncompliance with a state procedural rule may serve as a bar to habeas review.  *Scott v. Brunsman*, 695 F.Supp.2d 771, 779 (N.D.Ohio,2010).  However, the reviewing court must undertake a four-part analysis set forth in the seminal case of *Maupin v. Smith*, 785 F.2d 135, 139 (6th Cir. 1986), to determine if federal habeas review is actually precluded by the petitioner's failure to observe a state procedural rule.  *Id.*

First, there must be a state procedural rule in place that the petitioner failed to follow.  *Id.* (*Smith v. State of Ohio Department of Rehabilitation and Corrections*, 463 F.3d 426, 431 (6th Cir. 2006) (*citing Maupin*, 785 F.2d at 138)).

Second, the state court must have actually denied consideration of the petitioner's claim on the ground of the state procedural default.  *Id.* (*citing Smith,* 463 F.3d at 501-502).

Third, the state procedural rule must be an "adequate and independent state ground to preclude habeas review."  *Id.*

      **b.**      **THE FOURTH FACTOR**.

If the three factors set forth above are satisfied, the petitioner can overcome the procedural default by either demonstrating cause for the default and actual prejudice as a result

15

of the alleged violation of federal law, or that failure to consider the claims will result in a fundamental miscarriage of justice.  *Id*. (*citing Coleman, supra*, 111 S.Ct. at 2555).  In all cases in which a state prisoner has defaulted his or her federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate "cause" for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.  *Wogenstahl v. Mitchell,* 668 F.3d 307, 321 (6th Cir. 2012) *cert. denied*, 133 S.Ct. 311 (2012) (*citing Coleman, supra*, 111 S.Ct. at 2565).  The "cause" for default standard in procedural-default cases requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts" to raise a claim in the state courts.  *Id*. (*citing McCleskey v. Zant,* 111 S.Ct. 1454, 1469 (1991) (internal quotation marks omitted)). Such factors may include interference by officials, an attorney error rising to the level of ineffective assistance of counsel, or a showing of a factual or legal basis for a claim that was not reasonably available.  *Id*. (*citing McCleskey*, at 1470).

        1.      ACTUAL PREJUDICE DEFINED.

      The prejudice prong is an elusive concept but several guidelines can be discerned from the Supreme Court's pronouncements and the case law interpreting those pronouncements. *Maupin, supra*, 785 F.2d at 139.  First, it is clear that the prejudice that must be shown must be a result of the alleged constitutional violation and not a result of the trial counsel's failure to meet state procedural guidelines.  *Id*. (*see United States v. Frady*, 102 S.Ct. 1584, 1594 (1982) (prejudice must result from the errors of which defendant complained)).  Second, the burden is on the petitioner to show that he or she was prejudiced by the alleged constitutional error.  *Id*. (*citing Frady*, 102 S.Ct. at 1595).  Moreover, the petitioner must show that there was actual

prejudice not merely a possibility of prejudice.  *Id*. (*see also Engle v. Isaac*, 102 S.Ct. at 1572).

Third, in analyzing a petitioner's contention of prejudice, the court should assume that the

petitioner has stated a meritorious constitutional claim.  *Id*.  Thus, the examining court must

examine whether the petitioner was prejudiced by his conviction based on allegedly insufficient

evidence.  *Id*.

### 2.  FUNDAMENTAL MISCARRIAGE OF JUSTICE STANDARD.

A fundamental miscarriage of justice results when one who is "actually" innocent is

convicted.  *Gibbs v. United States*, 655 F.3d 473, 477 (6th Cir. 2011) *cert. denied,* 132 S. Ct.

1909 (2012).  Actual innocence means factual innocence, not merely legal insufficiency.  *Luster*

*v. United States,* 168 F.3d 913, 915 (6th Cir. 1999).  "Actual innocence" is an extremely narrow

exception, and "claims of actual innocence are rarely successful."  *Gibbs*, 655 F. 3d at 477

(*citing Schlup v. Delo*, 115 S.Ct. 851, 864 (1995)).  Moreover, "a claim of 'actual innocence' is

not itself a constitutional claim, but instead a gateway through which a habeas petitioner must

pass to have his otherwise barred constitutional claim considered on the merits."  *Id.* (*citing*

*Herrera v. Collins*, 113 S.Ct. 853, 862 (1993)).

### C.  THE MAUPIN FACTORS APPLIED TO PETITIONER'S DEFAULTED CLAIMS.

The first part of the *Maupin* test requires the Court to determine whether a state

procedural rule is applicable to petitioner's claim, and, if so, whether petitioner violated that rule.

It is clearly established in Ohio that claims appearing on the face of the record must be raised on

direct appeal, or they will be waived under Ohio's doctrine of res judicata.  *State v. Perry*, 10

Ohio St. 2d 175, 226 N.E.2d 104 (1967).  Claims that do not appear on the face of the record are

properly raised in a post-conviction action pursuant to OHIO REV. CODE § 2953.21.  However,

the accused must raise a colorable claim for ineffective assistance of counsel at the first

opportunity to do so in order to avoid default.  *See Monzo* v. *Edwards,* 281 F.3d 568, 576 (6th Cir. 2002).

The Magistrate rejects the argument that Petitioner's fourth, fifth, sixth and seventh claims are subject to habeas review because they were raised and addressed in the motion to reopen.  Petitioner should have raised these alleged errors in a direct appeal as the claims he relied upon were supported by evidence in the record.  The pleadings shows that these claims were devoted solely to Petitioner's third proposition of law--ineffective assistance of trial counsel--and there is no mention whatsoever that they were presented independently of that claim.

Under these circumstances, Petitioner violated Ohio's *res judicata* rule when he instead raised the claims in his post-conviction action as a predicate to another claim.  That being so, the Magistrate finds that the first prong of the *Maupin* test has been met.

In analyzing the second and third *Maupin* standards, the Sixth Circuit has already determined that *res judicata* is an adequate and independent state ground sufficient to foreclose habeas review of constitutional errors.  *Coleman v. Mitchell,* 268 F.3d 417, 429 (6th Cir. 2001) *cert. denied,* 122 S.Ct. 1639 (2002). The Sixth Circuit has rejected claims that Ohio has failed to apply the doctrine of *res judicata* consistently.  *Greer v. Mitchell,* 264 F.3d 663, 673 (6th Cir. 2001); *Monzo, supra*, 281 F.3d at 577.

The *res judicata* doctrine applies here because the issues raised in the fourth, fifth, sixth and seventh claims could have been fully litigated on direct appeal.  It is uncontroverted that the Supreme Court of Ohio relied upon its own procedural rules to deny Petitioner leave to pursue any unexhausted issues on appeal.  The Magistrate concludes that the state trial court did clearly and expressly enforce the *res judicata* rule against Petitioner's claims.  Thus, the second and

18

third prongs of the *Maupin* test have been met.

Notwithstanding Petitioner's assertions that he will be prejudiced by the Court's failure to grant the habeas relief requested, he has not overcome the procedural default by demonstrating cause for the default and actual prejudice.  In fact, the converse is true.  Petitioner has failed to come forward with any evidence of an external impediment, such as government interference and the reasonable unavailability of the factual basis for the claim, which prevented him from raising his claims on direct appeal.  Since the "cause and prejudice" test is stated in the conjunctive, there is no need to address whether Petitioner will be prejudiced by the Court's decision to decline habeas review.

D.      THE FUNDAMENTAL MISCARRIAGE OF JUSTICE STANDARD.

Even though Petitioner has not shown "cause and prejudice," this Court has equitable discretion to correct a fundamental miscarriage of justice if Petitioner proffers specific facts which support a finding that constitutional errors resulted in the incarceration of an actually innocent person.  Here, Petitioner alleged but failed to make a strong showing that he is the victim of fundamentally unjust incarceration, having alleged but failed to come forward with new, reliable evidence sufficient to cast doubt on the jury's verdict or meet the narrow exception reserved for and explicitly tied to actual innocence.  Failure to meet this miscarriage of justice exception precludes review of Petitioner's procedurally defaulted challenge to his fourth, fifth, sixth and seventh grounds for relief.  Petitioner is bound by his procedural default and he cannot obtain habeas review of these claims.

Since Petitioner has overcome the procedural barriers of time limitation, exhaustion and procedural default of his first, second and third claims, the Magistrate will conduct habeas review of these claims on the merits.

19

### VI. HABEAS STANDARD OF REVIEW.

The United States Court of Appeals for the Sixth Circuit will review the merits of Petitioner's claim pursuant to the deferential standard of review mandated in the AEDPA timely filed application for a writ of habeas corpus on behalf of a person in custody shall not be granted with respect to any claim adjudicated on the merits in state court proceedings unless the adjudication of the claim—

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (Thomson Reuters 2013).

"Clearly established federal law," for the purposes of § 2254(d)(1), refers to rulings of the United States Supreme Court in place at the time of "the last state-court adjudication on the merits." *Lovins, supra*, 712 F.3d at 293 (*citing Greene v. Fisher*, 132 S.Ct. 38, 44 (2011)). A decision is "contrary to" clearly established federal law under § 2254(d)(1) if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Id.* at 293-294 (*citing Williams, supra*, 120 S.Ct. at 1523).

A state-court decision unreasonably applies clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity." *Id.* (*citing Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (*quoting Yarborough v. Alvarado*, 124 S.Ct.

2140, 2149 (2004)).   "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."   *Id.* (*citing Harrington*, 131 S.Ct. at 786) (*quoting Yarborough*, 124 S.Ct. at 2149).

## VII. DISCUSSION.

### A.   THE FIRST GROUND FOR RELIEF
### SUFFICIENCY/MANIFEST WEIGHT OF THE EVIDENCE.

This ground for relief consists of two independent issues.  First, Petitioner claims that the trial court erred by failing to dismiss the State's charges against him because there was insufficient evidence to convict him.  Second, the convictions were against the manifest weight of the evidence.

### 1.   SUFFICIENCY OF EVIDENCE.

Petitioner argues that the arresting officers only observed him drive around the block. They did not observe him arranging for the delivery of the drugs or observe his involvement in the drug trade.   It is Petitioner's opinion that this evidence was insufficient to support a conviction.

In reviewing a record for sufficiency, the fact finder must inquire as to whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  *Leonard v. Warden, Ohio State Penitentiary,* 2013 WL 831727, *81 (S.D.Ohio,2013) (*citing State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 paragraph two of the syllabus (1991), *following Jackson v. Virginia,* 99 S.Ct. 2781 (1979)).   In a sufficiency of evidence habeas corpus case, deference should be given the trier of fact's verdict and then to the appellate court's consideration of the verdict.  *Id.* at *83.  Faced with a record of historical facts that supports conflicting inferences

21

[and a fortiori findings], the trier of fact must presume—even if it does not affirmatively appear in the record—that he or she resolved any such conflicts in favor of the prosecution, and must defer to that resolution.  *Id.* (*citing Blackmon v. Booker*, 696 F.3d 536 (6th Cir.2012) *cert. denied*, 133 S.Ct. 1501 (2013); *quoting McDaniel v. Brown*, 130 S.Ct. 665, 673 (2010)).

A petitioner faces a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.  *Id.* at *84.  First, on direct appeal, the jury, not the court, has the responsibility to decide what conclusions should be drawn from evidence admitted at trial. *Id.*  A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.  *Id.* (*citing Cavazos v. Smith*, 132 S.Ct. 2 (2011) ( per curiam )).  Second, when conducting habeas review, the federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  *Id.*  Rather, the federal court may do so only if the state court decision was 'objectively unreasonable.  *Id*. (*citing Cavazos,* 132 S.Ct. at *3, *6) (*quoting Renico v. Lett*, 130 S.Ct. 1855 (2010); *Coleman v. Johnson*, 132 S.Ct. 2060, 2062 (2012) ( per curiam)).

## 2.  THE EVIDENCE AGAINST PETITIONER.

Upon review of the transcript, the Magistrate found substantial evidence that Petitioner violated the statutes that prohibit drug possession and drug trafficking.  The sworn testimony of Kisha Marshall and Raphael Caprez was persuasive evidence of Petitioner's guilt.  Kisha Marshall testified at length, detailing her relationship with Petitioner, the arrangements made for her to accept delivery of his cocaine and Petitioner's plans for its retrieval from her.  She was helpful in explaining that Petitioner was engaged in an enterprise that included shipments

22

between Texas and Akron (Docket No. 6-5, pp. 13-78 of 206).

Raphael Caprez of the Akron Police Department testified that once he was notified of a controlled delivery of cocaine through FedEx, he conducted surveillance prior to delivery and observed Petitioner's vehicle "casing" the target house. His fellow officers obtained a search warrant and staked out the target house where Kisha Marshall was ready to accept delivery of the cocaine. Having reasonable suspicion sufficient to justify the commission of a crime, Officer Caprez pulled into the driveway behind Petitioner's car, executing an investigatory stop while hi fellow officers converged on the target house (Docket No. 6-3, pp. 7-10; 12-16 of 84).

The unrefuted testimony from these witnesses alone was sufficient for a rational trier of fact to find Petitioner guilty of possession and trafficking beyond a reasonable doubt.

### 3. MANIFEST WEIGHT OF THE EVIDENCE.

Any manifest weight of the evidence challenge requires the reviewing court to re-weigh the evidence presented at trial and to resolve issues of credibility. *Glenn v. Bobby,* 2013 WL 3421888, *11 (N.D.Ohio,2013). The role of the habeas reviewing court in considering such a claim is limited. *Id*. The habeas reviewing courts are not forums in which to re-litigate state trials. *Id*. A habeas reviewing court does not re-weigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court. *Id*. (*citing Marshall v. Lonberger*, 103 S.Ct. 843, 850 (1983). It is the province of the fact-finder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Id*. (*citing Neal v. Morris,* 972 F.2d 675, 679 (6th Cir.1992)). Therefore, the mere existence of sufficient evidence to convict defeats a petitioner's claim. *Id*.

**4.    THIS CLAIM IS NOT COGNIZABLE IN FEDERAL HABEAS CORPUS.**

Even if the Magistrate considered Petitioner's challenge to the quality, not the weight, of the State's evidence, a review of the record demonstrates that Petitioner's conviction is not against the manifest weight of the evidence.  The manifest weight of the evidence actually supports Petitioner's convictions.  Nevertheless, Petitioner's manifest weight of the evidence challenge is not within the province of federal habeas review as this Court may not reexamine state court determinations on state-law questions.  Since Petitioner's state law claim does not implicate a violation of the Constitution, laws or treatises of the United States, this Court is foreclosed from reviewing perceived errors in the state court's interpretation of its own rules of evidence and procedure.

**B.    THE SECOND GROUND FOR RELIEF
PROSECUTORIAL MISCONDUCT.**

Petitioner suggests that the prosecutor engaged in misconduct by failing to corroborate the testimony of his accomplice and agreeing to dismiss the charges against her if she testified against Petitioner.

On habeas review, claims of prosecutorial misconduct are reviewed deferentially. *Darden v. Wainwright*, 106 S.Ct. 2464, 2471 (1986).  To be cognizable, the misconduct must have " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' "  *Id.* (citation omitted).  When there are allegations of prosecutorial misconduct, the court must examine whether the alleged conduct actually amounted to prosecutorial misconduct and if so, whether it was so egregious as to warrant a new trial.  *United States v. Jackson-Randolph*, 282 F. 3d 369, 384 (6th Cir. 2002).  It is well established in Ohio law that the promise of immunity, when fully disclosed to the jury, affects the weight to be given to the testimony, not

its admissibility.  *See State v. Wolery*, 46 Ohio St.2d 316, 322-323, 348 N. E. 2d 351, 357 (1976).

Petitioner has failed to provide any authority or evidence which supports the proposition that the prosecutor illegally interceded, offering Kisha Marshall a "deal" if she bolstered her testimony with inculpatory evidence or somehow embellished the facts to insure a finding of guilt.  The record does not show that the prosecutor had a conflict of interest or that he knowingly obtain and/or use false testimony from this witness.  In fact, there is a presumption that Kisha Marshall's testimony was generally reliable and trustworthy because pre-trial screening in the form a polygraph examination was enlisted.  Kisha Marshall was not permitted to refer to the polygraph examination during her testimony and the jury was advised of the prosecutor's agreement with Kisha Marshall.  It was clearly within the jury's province to determine the weight of that agreement in filtering her testimony (Docket No. 6-3, pp. 37-40 of 84).

Kisha Marshall's testimony was pivotal in linking Petitioner to the possession of 1,555.5 grams of cocaine for which she was prepared to accept delivery on his behalf.  Insuring that Kisha Marshall testified was consistent with the prosecutor's duty to elicit the truth.  Petitioner has not shown that making an agreement about her testimony and then calling on Kisha Marshall to testify, infringed upon his right to a fair trial.

C.    THE THIRD GROUND FOR RELIEF
       INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

On an appeal of right, a criminal defendant is entitled to effective assistance of appellate counsel.  *Evans v. Hudson,* 575 F.3d 560, 564 (6th Cir.2009) (*citing Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir.2008)).  Claims of ineffective assistance of appellate counsel are subject to the

*Strickland* test[4], which requires a defendant to show both deficient representation and prejudice. *Id*. To meet his or her burden, "a petitioner must show that the performance of counsel fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (*citing Burton v. Renico*, 391 F.3d 764, 773 (6th Cir.2004) (internal quotation marks omitted); *see also Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir.2003)). When evaluating the issue of ineffective assistance of appellate counsel, the review of the appellate proceedings focuses on determining whether prejudice is shown. *Id.* (*citing Mapes v. Tate*, 388 F.3d 187, 194 (6th Cir.2004) (noting that prejudice is shown if "there is 'a reasonable probability that, but for his counsel's [failings] ..., [the defendant] would have prevailed on his appeal' ") (alterations in original) (*quoting Smith v. Robbins*, 120 S.Ct. 746, 764 (2000)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 564-565 (*citing Burton*, *supra*, 391 F.3d at 773 (internal quotation marks omitted); *Maples, supra*, 340 F.3d at 437).

Here, Petitioner's habeas petition articulates that his appellate counsel was ineffective for failing to assert the following challenges:

1.      The modification and/or amendments to the judgment of conviction, by way of *nunc pro tunc*, were contrary to law.
2.      The sentence imposed by trial court was contrary to law, because the jury verdict forms do not sustain a conviction for a first degree felony in counts one or two.
3.      The sentences herein are void pursuant to being imposed on allied offenses of similar import, thereby affronting double jeopardy prohibitions.

---

4

In *Strickland v. Washington*, 104 S. Ct. 2052, 2066 (1984), the Supreme Court of the United States directed courts deciding an actual ineffectiveness claim to judge the reasonableness of counsel's challenged conduct on the facts of the case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts and omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Id.* The court must determine whether, in light of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. The court is cautioned that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment *Id.*

4. State officials committed outrageous government conduct when they combined two distinctively separated quantities and qualities of evidence into one bulk package, thereby trying, convicting and sentencing Petitioner for crimes for which he was never arrested (Docket No. 6-1, pp. 149-158 of 216).

1. THE ORDER *NUNC PRO TUNC*.

Petitioner argues that appellate counsel should have argued in the appeal that the trial court lacked authority to modify his sentence by issuing a *nunc pro tunc* entry. In the first journal entry memorializing the verdict as well as the sentence, there was reference to the major drug offender specification made by the jury.

OHIO REV. CODE § 2941.1410, which governs major drug offender specifications, provides that the court shall determine that an offender is a major drug offender. The Magistrate has reviewed the *nunc pro tunc* entry and determined that the entry actually corrected a clerical error, eliminating the ambiguity surrounding whether the jury made a determination that Petitioner was a major drug offender. Because the trial court did not err in issuing a *nunc pro tunc* order, the Magistrate does not find that appellate counsel abandoned a viable defense or that appellate counsel's alleged error was so serious as to prejudice the outcome of his trial.

2. THE VERDICT FORMS.

Petitioner asserts that appellate counsel should have argued that the trial court erred in failing to demand verdict forms which permitted a finding of guilt for lessor included offenses.

The Supreme Court of Ohio recognizes that OHIO REV. CODE § 2945.74 provides that a criminal defendant may be found guilty of a lessor included offense even though the lessor offense was not separately charged in the indictment. *State v. Evans,* 122 Ohio St.3d 381, 383-384, 911 N.E.2d 889, 892 (2009). Lessor included offenses need not be separately charged in an indictment, because when an indictment charges a greater offense, it " 'necessarily and

27

simultaneously charges the defendant with lessor included offenses as well.' " *Id.* (*citing State v. Smith*, 121 Ohio St.3d 409, 2009-Ohio-787, 905 N.E.2d 151, ¶ 14, *quoting State v. Lytle,* 49 Ohio St.3d 154, 157, 551 N.E.2d 950 (1990)).  Thus, a conviction for a lessor included offense does not deprive an offender of his constitutional right to presentment or indictment by the grand jury, because by indicting the offender for the greater offense, the jury has necessarily considered each of the essential elements of the lessor offense.  *Id.*

A three-part test has been established for courts to use to determine whether one offense is a lessor included offense of another, stating:  "An offense may be a lessor included offense of another if:

  (i)     the offense carries a lessor penalty than the other;
  (ii)    the greater offense cannot, as statutorily defined, ever be committed without the lessor offense, as statutorily defined, also being committed; and
  (iii)   some element of the greater offense is not required to prove the commission of the lessor offense."

*Id.* (*citing State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294 at paragraph three of the syllabus (1988).

Notwithstanding Petitioner's failure to advise what offenses, if any, constitute a lessor included offense of any of the offenses charged in the indictment, the Magistrate finds that all elements of the offenses charged in the indictment were proven beyond a reasonable doubt.  Consequently, the trial court could properly refuse to instruct the jury as to inferior offenses.  This claim lacks merit and appellate counsel did not perform deficiently in failing to raise the claim on direct appeal or in the motion to reopen.

  **3.     ALLIED OFFENSES**.

Petitioner contends that appellate counsel should have made an argument that the

offenses of trafficking and possession of cocaine are allied offenses of similar import; therefore, he cannot be convicted of both trafficking and possession and one of the two convictions must be vacated.

OHIO REV. CODE § 2941.25(A) provides in relevant part that where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, yet the defendant may be convicted of only one offense. *State v. Fritz,* 182 Ohio App.3d 299, 302, 912 N.E.2d 650, 652 (2009). OHIO REV. CODE § 2941.25 implements the protections of the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States and Section 10, Article I of the Ohio Constitution, which prohibit a second punishment for the same offense. *Id.* (*citing State v. Underwood*, Montgomery App. No. 22454, 2008-Ohio-4748, 2008 WL 4278145, ¶ 21, *citing State v. Lovejoy*, 79 Ohio St.3d 440, 683 N.E.2d 1112 (1997)). To avoid that result, when two or more allied offenses of similar import are charged and guilty verdicts for two or more are returned, OHIO REV. CODE § 2941.25 requires a merger of multiple guilty verdicts into a single judgment of conviction, not a merger of sentences upon multiple judgments of conviction. *Id.* at ¶ 22–23.

The Supreme Court of Ohio acknowledges a two-step analysis required by OHIO REV. CODE § 2941.25 to determine if an offender's conduct constitutes two or more offenses of similar import. *State v. Cabrales,* 118 Ohio St.3d 54, 57, 886 N.E.2d 181, 184 (2008) (*see Newark v. Vazirani*, 48 Ohio St.3d 81, 549 N.E.2d 520 syllabus (1990); *State v. Blankenship,* 38 Ohio St.3d 116, 117, 526 N.E.2d 816 (1988); *State v. Mughni,* 33 Ohio St.3d 65, 67, 514 N.E.2d 870 (1987); *State v. Talley,* 18 Ohio St.3d 152, 153, 480 N.E.2d 439 (1985); *State v. Logan,* 60

29

Ohio St.2d 126, 128, 397 N.E.2d 1345 (1979)). In the first step, the elements of the two crimes are compared and if the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. *Id.* In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. *Id.* at 184-185. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses. *Id.* (Emphasis sic.) (*State v. Blankenship*, 38 Ohio St.3d at 117, 526 N.E.2d 816).

The Supreme Court of Ohio compared the elements of possessing a controlled substance under OHIO REV. CODE § 2925.11(A) with the elements of trafficking in a controlled substance under OHIO REV. CODE § 2925.03(A) (2). *Cabrales*, *supra*, 118 Ohio St. 3d at 61-62, 886 N.E.2d at 188. To be guilty of possession, an offender must knowingly obtain, possess or use a controlled substance. To be guilty of trafficking, an offender must prepare the controlled substance for shipment, ship, deliver, prepare for distribution or actually distribute the controlled substance or the offender must know or have reasonable cause to believe that the controlled substance is intended for sale or resale. *Id.* The Court reasoned that in order to ship a controlled substance, deliver it, distribute it or prepare it for shipping, etc., the offender must have control over the substance. *Id.* (*citing* OHIO REV. CODE § 2925.01(K) (defining possession)). Thus the Court concluded that trafficking in controlled substances under OHIO REV. CODE § 2925.03(A)(2) and possession of the same controlled substance under OHIO REV. CODE § 2925.11(A), are allied offenses. The Court further concluded that Mr. Cabrales committed the offenses with a single animus, namely, to sell it. *Id.* Accordingly, Mr. Cabrales could not be

convicted of both offenses.  *Id.*

The Magistrate acknowledges that Petitioner committed one offense and committed the other offense with the same conduct.  Common sense dictates that Petitioner necessarily had to possess the cocaine before he could prepare it for shipping or distribution and that the trafficking offense necessarily resulted in the offense of possession.  There was no separate animus for each crime.  Petitioner's convictions for possessing and trafficking in cocaine arose out of the same transaction, involved the same contraband and the transactions were committed with a single state of mind.  Accordingly, Petitioner's offenses of possession of cocaine and trafficking in cocaine are allied offenses of similar import and Petitioner was entitled to a merger of multiple guilty verdicts into a single judgment of conviction pursuant to OHIO REV. CODE § 2941.25(A).

As for the performance prong of the *Strickland* test, it is arguable that Petitioner did receive ineffective assistance of appellate counsel for the failure to advance this allied offense argument in the direct appeal.  As such, there would be deficient performance by appellate counsel.  Petitioner cannot, however, satisfy the prejudice prong of the analysis.  In all reasonable probability, even if appellate counsel had appealed this issue, the deficient performance did not render the outcome of Petitioner's appeal fundamentally unfair under the sentencing paradigm used in this case.  The trial court imposed a separate ten-year sentence for the offense of drug possession and drug trafficking.  The sentences were ordered to be served concurrently, effectively merging both judgments of conviction into a single sentence and foreclosing a second punishment.  Because Petitioner cannot show that he was prejudiced by appellate counsel's performance, the Magistrate must deny his request for relief.

**4.**    **PROSECUTORIAL MISCONDUCT**.

Petitioner argues that appellate counsel was ineffective as the prosecution combined two separate and distinct packages of drugs into one package in order to obtain a higher level of felony conviction.

Petitioner is reminded that to find prosecutorial misconduct, there must be evidence of improper conduct and the conduct must prejudicially affect the accused's substantial rights.  In this case, the prosecutor's case involved a shipment of 1,555.5 grams of powder cocaine to the Akron address.  At trial the parties stipulated that the cocaine used to prosecute this claim was from a **single** shipment (Docket No. 6-6, pp. 2-3 of 15; *State v. Shinholster*, 2011-Ohio-2244, at ¶16).  There is no indication that the two separate and distinct packages were combined in order to justify a cumulative sentence.

In summary, petitioner has failed to show that appellate counsel was objectively unreasonable in failing to make this argument in a direct appeal or in the motion to reopen. There is no reasonable probability that but for appellate counsel's failure to raise this issue, Petitioner would have prevailed on his appeal.

### VIII. CONCLUSION

For these reasons, the Magistrate recommends that the Court deny the Petition for Writ of Habeas Corpus and terminate the referral to the undersigned Magistrate Judge.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date:        July 17,  2013

32

### IX. NOTICE

Please take notice that as of this date the Magistrate Judge's report and recommendation attached hereto has been filed.  Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, any party may object to this report and recommendations within fourteen (14) days after being served with a copy thereof.  Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.  The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals.  In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.